IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
March 8, 2016 Session

**ESSAM ESHAK v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Davidson County**
**No. 2009-D-3394    Cheryl A. Blackburn, Judge**

_____

**No. M2015-01154-CCA-R3-PC – Filed June 10, 2016**

_____

The Petitioner, Essam Eshak, appeals the dismissal of his petition for post-conviction relief as untimely. He asserts that the statute of limitations should be tolled in the interest of justice because trial counsel had an actual conflict of interest by simultaneously representing the Petitioner and his co-defendant and should not have assisted the Petitioner in entering a guilty plea. After review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and CAMILLE R. MCMULLEN, J., joined.

Kevin R. McGee (at hearing and on appeal) and Richard McGee (at hearing), Nashville, Tennessee, for the appellant, Essam Eshak.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Victor S. ("Torry") Johnson III, District Attorney General; and James W. Milam and Robert W. Mitchell, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**
FACTUAL BACKGROUND

The Petitioner is a Coptic Christian and was granted asylum in the United States in 2001 due to religious persecution occurring in his native country of Egypt. He later became a Lawful Permanent Resident of the United States on January 12, 2006. In December 2009, the Petitioner was charged, along with his brother-in-law, Guirguis K.

Awad, with forty-two counts of filing false sales tax returns and one count of theft of property valued at $60,000 or more but less than $250,000. See Tenn. Code Ann. §§ 39-14-103, 67-1-1440(e). The Defendant entered guilty pleas on March 11, 2010, to four counts of "conspiring to obstruct sales tax laws" with two-year sentences each—the first three counts to run concurrently and the fourth count to run consecutively, for an effective four-year sentence. The sentences were suspended to be served on supervised probation, and he was ordered to pay restitution to the Department of Revenue in the amount of $92,011.97, being jointly and severally liable with co-defendant Awad. The prosecution conditioned the deal on co-defendant Awad also accepting a plea.[1]

At the guilty plea submission hearing, the State summarized the facts surrounding the offenses as follows:

> [T]hese defendants were the owners of a business establishment called [Ragig] Tobacco Store located in Green Hills . . . and . . . the Department of Revenue did a civil audit of the returns filed by that business for the period from December 2003 through June of 2007. That audit revealed that there was a deficiency in the record keeping. Z tapes were missing from the store. A more detailed audit ensued for the period of January 2004 through June of 2007. That audit was performed using the factory method by which the investigators and auditors would obtain the sales invoices from the vendors who supplied products to the [Ragig] Tobacco Store, which were then sold at retail. These vendors included a number of beer distributors and primarily cigarette manufacturers and distributors. From those records it was determined that the sales of the store were far in excess of the amount of sales reported on sales tax returns for the period from January `04 through June of `07.
>
> Specifically the audit showed that the defendants had reported taxable sales of a little over $656,000 during that audit period when their actual sales were at least one point six—$1,648,000 or approximately a million dollars more than what they reported. And therefore there had been a failure to pay taxes on the $991,890 in unreported taxable sales. That is the basis for the tax deficiency that is contained in the restitution of $92,011[.]

Prior to entering his pleas, the Petitioner was advised by an immigration attorney, Marilyn Devine, and the parties agreed to structure the Petitioner's agreement in a way so as to minimize its immigration consequences. The Petitioner entered pleas to Counts 38,

---

[1] Awad was a United States citizen and, thus, did not have any immigration concerns. He entered a plea to the additional Class B felony theft charge and received an eight-year sentence for that conviction.

39, 40, and 41, Class E felonies that had offense dates occurring after the Petitioner became a Lawful Permanent Resident.[2] The plea agreement specified the amount of loss for each count as less than $10,000—$2,305.76 in Count 38; $2,615.29 in Count 39; $3,370.40 in Count 40; and $3,052.38 in Count 41—although the State still required the total amount of restitution to be set at $92,011.97, which was specified in the judgment forms.[3] The remaining counts were dismissed, including the Class B felony theft charge. The written correspondence from Ms. Devine makes it evident that, while there were arguments to be made to immigration officials, the Petitioner was advised he was facing possible deportation by entering these pleas and that leaving the United States would possibly cause him further immigration troubles.

Nonetheless, while on probation, the Petitioner, represented by a different attorney, twice sought permission from the Davidson County Criminal Court to leave the country and travel to Egypt. His first request was granted on September 8, 2011, authorizing him to travel to Egypt for sixty days. This trip occurred without incident. A second request, this time for ninety days, was granted on March 2, 2012. However, this time, the Petitioner was detained by immigration authorities when he tried to reenter the country. The Petitioner then hired Mona Mansour, another immigration lawyer, to represent him in proceedings with the immigration court. Although Ms. Mansour made arguments for the Petitioner to remain in the United States, the immigration court ultimately rejected those contentions. Thereafter, the Petitioner's appeal was denied, and he was eventually deported to Egypt.

The Petitioner's pro se "Motion Seeking Vacation of Sentence and Conviction Pursuant to Tennessee Post-Conviction Procedures Act" was filed with the Davidson County Criminal Court Clerk on January 22, 2013.[4] The Petitioner, citing Padilla v. Kentucky, 559 U.S. 1 (2010), argued that he was not advised of the immigration

---

[2] Pursuant to the Immigration and Nationality Act, if an alien is convicted of a crime of moral turpitude that occurred before the adjustment of said alien's status to a Lawful Permanent Resident, then the alien was inadmissible at the time of adjustment and is, therefore, deportable. See 8 U.S.C.A §§ 1182(a)(2)(A)(i), 1227(a)(1)(A). Furthermore, a theft offense that results in imprisonment for at least one year qualifies as an aggravated felony. See 8 U.S.C.A. § 1101(a)(43)(G).

[3] Also, pursuant to the Immigration and Nationality Act, any alien who is convicted of an aggravated felony at any time after admission is deportable. See 8 U.S.C.A § 1227(a)(2)(A)(iii). Any crime in which the revenue loss to the government exceeds $10,000 is considered an aggravated felony. See 8 U.S.C.A § 1101(a)(43)(M). Additionally, the amount of restitution ordered can qualify an offense as a particularly serious crime, making a felon ineligible to escape deportation by "withholding of removal." See 8 U.S.C.A § 1231(b)(3)(B)(ii).

[4] The Petitioner's signature affixed to the motion is dated December 17, 2012, and it appears that it was delivered to correctional facility officials on December 20, 2012.

consequences of his guilty pleas and that he only learned of his ineffective assistance counsel claim outside of the one-year statute of limitations. The post-conviction court initially summarily dismissed the petition as time-barred, concluding that Padilla did not require retroactive application of a constitutional right and that due process did not operate to toll the limitations period for filing for post-conviction relief. After counsel was retained, the post-conviction court later vacated its initial order to allow for an evidentiary hearing due to the "utmost concern" over the "potential civil abuses occurring in Egyptian prisons."

Three amended petitions for post-conviction relief were thereafter filed. In the first amended petition, the Petitioner argued that he was incorrectly advised prior to entry of his pleas that he would not be deported and that his convictions would not be considered as aggravated felonies for immigration purposes, which advice rendered his pleas involuntary. He further contended that due process required tolling of the limitations period because he "had no knowledge that he had received completely erroneous legal advice about whether he would be deported until he was detained" by immigration authorities in June 2012. He also submitted that due process supported providing him the opportunity to raise his time-barred post-conviction claims "because of the very real and very life-threatening consequences that [he] is facing due to the completely erroneous legal advice that he was given." A second amended petition was filed, wherein the Petitioner argued that counsel "engaged in an actual conflict of interest by representing both the Petitioner and [co-defendant Awad]." He explained that he only entered guilty pleas in this case "after being advised by counsel with a conflict of interest" and that, under these facts, he "need not prove prejudice as it relates to his ineffective assistance of counsel" claim because it should be presumed. Finally, a third petition was submitted with the Petitioner alleging that his guilty pleas were void because the trial court failed to ensure that a factual bases existed for the pleas to conspiracy to obstruct sales tax laws, which resulted in pleas that were not "knowing and voluntary in violation of due process." He further stated that "the importance of this deficiency in the plea process" was "yet another reason why [d]ue [p]rocess require[d] the tolling of the statute of limitations in this case."

Hearings on the petitions took place on May 28, 2013, May 6, 2014, August 13, 2014, and August 19, 2014.[5] Testifying at these various hearings were Mona Mansour, the attorney who represented the Petitioner in immigration court following his detention by immigration authorities; co-defendant Awad; the Petitioner via teleconference from Egypt; trial counsel; and David Raybin, an attorney who consulted with trial counsel on

---

[5] The post-conviction court noted that the Petitioner was first required to overcome the statute of limitations. However, the court also acknowledged that, over the span of the four hearings, the Petitioner was allowed "to present proof of due process tolling contemporaneously with the substantive proof for his post-conviction claims."

-4-

this case regarding the potential conflict of interest. Importantly, trial counsel testified that he informed both the Petitioner and co-defendant Awad from the beginning of his representation that a potential conflict of interest might arise if criminal charges were filed, which possibly could have created the need for both of them to obtain separate counsel. Trial counsel admitted that, once criminal charges had been commenced, he had a meeting with co-defendant Awad alone and that, during that meeting, co-defendant Awad made certain disclosures blaming the Petitioner for the business's failure to pay sales tax. After consulting with Raybin, trial counsel met with both the Petitioner and co-defendant Awad, insisted upon co-defendant Awad relaying to the Petitioner the same information he had given to trial counsel in their previous one-on-one meeting, and then required both men to consent to further representation by trial counsel before going forward with plea negotiations. Also, Ms. Mansour, who had reviewed Ms. Devine's correspondence, testified that she would have given the Petitioner "similar advice" about the immigration consequences of his pleas.

After taking the matter under advisement, the post-conviction court entered an order denying relief on May 19, 2015. The post-conviction court first determined that the petition was time-barred. Assuming arguendo that due process did require tolling, the court also concluded that the Petitioner had failed to establish his entitlement to post-conviction relief. This appeal followed.

ANALYSIS

On appeal, the Petitioner presents his issues as follows: (1) whether due process requires tolling of the one-year statute of limitations for post-conviction relief "when [the] Petitioner's attorney was operating under an actual conflict of interest"; and (2) whether trial counsel rendered ineffective assistance to the Petitioner based upon that conflict of interest. The State responds that the post-conviction court properly dismissed the petition as untimely and, moreover, that the court correctly determined that "trial counsel was not operating under an actual conflict of interest." We agree that the petition is time-barred and that due process does not require tolling of the limitations period.

Post-conviction relief is only warranted when a petitioner establishes that his or her conviction is void or voidable because of an abridgement of a constitutional right. Tenn. Code Ann. § 40-30-103. The burden in a post-conviction proceeding is on the petitioner to prove the factual allegations in support of his grounds for relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f); Dellinger v. State, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the post-conviction court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). A post-conviction

court's conclusions of law, however, are subject to a purely de novo review by this court, with no presumption of correctness. Id. at 457.

Tennessee's Post-Conviction Procedure Act provides that a claim for post-conviction relief must be filed "within one (1) year of the date of the final action of the highest state appellate court to which appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final, or consideration of such petition shall be barred." Tenn. Code Ann. § 40-30-102(a). "[T]he right to file a petition for post-conviction relief . . . shall be extinguished upon the expiration of the limitations period." Tenn. Code Ann. § 40-30-102(a). "If it plainly appears from the face of the petition, any annexed exhibits or the prior proceedings in the case that the petition was not filed . . . within the time set forth in the statute of limitations, . . . the judge shall enter an order dismissing the petition." Tenn. Code Ann. § 40-30-106(b). The Post-Conviction Procedure Act is explicit that the one-year statute of limitations "shall not be tolled for any reasons, including any tolling or saving provision otherwise available at law or equity." Tenn. Code Ann. § 40-30-102(a).

The Act provides for only three narrow factual circumstances in which the statute of limitations may be tolled:

> (1) The claim in the petition is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial, if retrospective application of that right is required. The petition must be filed within one (1) year of the ruling of the highest state appellate court or the United States [S]upreme [C]ourt establishing a constitutional right that was not recognized as existing at the time of trial;
> (2) The claim in the petition is based upon new scientific evidence establishing that the petitioner is actually innocent of the offense or offenses for which the petitioner was convicted; or
> (3) The claim asserted in the petition seeks relief from a sentence that was enhanced because of a previous conviction and the conviction in the case in which the claim is asserted was not a guilty plea with an agreed sentence, and the previous conviction has subsequently been held to be invalid[.]

Tenn. Code Ann. § 40-30-102(b). Tennessee courts have also recognized that, in certain circumstances, strict application of the statute of limitations would deny a petitioner the reasonable opportunity to bring a post-conviction claim and that, in these instances, due process requires the tolling of the statute of limitations.

Recently, in <u>Whitehead v. State</u>, our supreme court discussed due process in a post-conviction context. The court identified three scenarios in which due process requires tolling the post-conviction statute of limitations. 402 S.W.3d 615, 623-24 (Tenn. 2013); <u>see also</u> <u>Williams v. State</u>, 44 S.W.3d 464 (Tenn. 2001); <u>State v. Nix</u>, 40 S.W.3d 459 (Tenn. 2001); <u>Seals v. State</u>, 23 S.W.3d 272 (Tenn. 2000); <u>Sands v. State</u>, 903 S.W.2d 297 (Tenn. 1995); <u>Burford v. State</u>, 845 S.W.2d 204 (Tenn. 1992). The first of the three circumstances involves claims for relief that arise after the statute of limitations has expired. <u>Whitehead</u>, 402 S.W.3d at 623. The second due process basis for tolling the statute of limitations involves prisoners whose mental incompetence prevents them from complying with the statute's deadline. <u>Id.</u> at 624. The third exception is when attorney misconduct necessitates the tolling of the statute of limitations. <u>Id.</u>

Elaborating on this third exception, our supreme court concluded that a petition for post-conviction relief is entitled to due process tolling of the statute of limitations based upon the conduct of the petitioner's attorney when (1) the petitioner had been diligently pursuing his or her rights and (2) extraordinary circumstances prevented the timely filing of the petition. <u>Whitehead</u>, 402 S.W.3d at 631 (citing <u>Holland v. Florida</u>, 560 U.S. 631, 649 (2010)). The court clarified that "pursuing his or her right diligently" did "not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option, but rather to make reasonable efforts" to pursue the claim. <u>Id.</u> (quoting <u>Downs v. McNeil</u>, 520 F.3d 1311, 1323 (11th Cir. 2008)) (internal quotation marks omitted). The second prong is met when a petitioner's attorney of record abandons the petitioner or acts in a way directly adverse to the petitioner's interests, such as by actively lying or otherwise misleading the petitioner to believe things about his or her case that are not true. <u>Id.</u> (citations omitted).

Counsel in <u>Whitehead</u> erroneously advised the petitioner of the deadline for filing a pro se post-conviction petition and failed to deliver promptly to the petitioner the litigation files necessary to prepare the petition. 402 S.W.3d at 632-33. The court held that the combination of these circumstances prevented the petitioner from filing a timely post-conviction petition and required due process tolling of the statute of limitations. <u>Id.</u> However, the court emphasized that due process tolling "must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." <u>Id.</u> at 631-32 (internal quotation omitted).

The post-conviction court entered a detailed order addressing the Petitioner's various due process arguments for tolling the statute of limitations that he raised in his petitions. Addressing the initial pro se petition, the post-conviction court again noted that Tennessee law is well-settled that <u>Padilla v. Kentucky</u>, 559 U.S. 1, does not apply retroactively. <u>See, e.g.</u>, <u>Rene S. Guevara v. State</u>, No. W2011-00207-CCA-R3-PC, 2012

WL 938984, at *3 (Tenn. Crim. App. Mar. 13, 2012) (concluding that retroactive application of the rule announced in Padilla—requiring counsel to advise a petitioner about the deportation consequences of pleading guilty—was not warranted).

The post-conviction court then discussed the Petitioner's additional tolling arguments presented in his first amended petition, wherein he relied in part on Burford v. State, 845 S.W.2d 204, and submitted that he "had no knowledge that he had received completely erroneous legal advice about whether he would be deported until he was detained by [immigration authorities] in June of 2012." The post-conviction court characterized this due process argument as one where the Petitioner's claim for relief arose after the statute of limitations had expired. The Petitioner continued that due process should allow him an opportunity to raise his post-conviction grounds because of "the very real and very life-threatening consequences" he faced in Egypt "due to the completely erroneous legal advi[c]e" given by trial counsel. In dismissing these contentions for tolling, the post-conviction court concluded that the "Petitioner's due process arguments do not qualify as the type of later-arising grounds addressed in Burford and [the] Petitioner's bas[e]s for tolling do[] not involve any type of mental issues[.]"

Turning to the third type of due process scenario presented in Whitehead and raised by the Petitioner, i.e., attorney misconduct, the post-conviction court concluded that the Petitioner had failed to meet either prong of the two-part Whitehead test: "There is no indication that [the] Petitioner had been diligently pursuing his rights or that there was an extraordinary circumstance that stood in his way to prevent timely filing. Nor has [the] Petitioner presented any evidence that [t]rial [c]ounsel actively lied to him or misled him about his case." In so concluding, the post-conviction court reasoned as follows:

First, the [c]ourt finds it incredulous for [the] Petitioner to allege immigration concerns did not arise until after he was detained, or even after he entered his guilty plea. As demonstrated by the exhibits, an immigration attorney was involved in the plea negotiation process. Letters between the State and [t]rial [c]ounsel demonstrate that [t]rial [c]ounsel negotiated a plea offer with the State to mitigate [the] Petitioner's immigration consequences while still adhering to the State's requirements. . . .
Further, while [the] Petitioner was on probation and requested travel permits, this [c]ourt appointed [the] Petitioner counsel to assist him. [The] Petitioner initiated the travel request and his counsel prepared orders permitting travel, which this [c]ourt granted. The detention that triggered [the] Petitioner's filing for relief, therefore, was not "beyond his control" as required for due process tolling. [The] Petitioner's voluntary return to Egypt—not just once, but twice—undermine his claim that he fears

-8-

persecution for his religious beliefs. . . . While on probation, [the] Petitioner requested this [c]ourt to authorize travel permits in 2011 and 2012, which as immigration counsel conceded at the post-conviction evidentiary hearing, placed [the] Petitioner's asylee status in jeopardy and was a factor considered by the [i]mmigration [c]ourt in its determination to deport [the] Petitioner.

The court then dismissed the petition as untimely because the Petitioner failed to demonstrate that due process justified tolling the filing period.

Untimeliness notwithstanding, the post-conviction court adjudicated the merits of the Petitioner's post-conviction challenges, finding (1) that the Petitioner had failed to show that trial counsel was deficient or that he was prejudiced by any alleged deficiency regarding advice to the Petitioner about the immigration consequences of his pleas, additionally remarking that "it is evident that [t]rial [c]ounsel was thoroughly aware of the evidence based on his involvement in the civil case"; (2) that the Petitioner had failed to show that trial counsel was compromised in his representation by an actual conflict of interest or that said conflict of interest affected trial counsel's performance; (3) that trial counsel's failure to obtain a written waiver, although required by Rule 1.7 of the Tennessee Supreme Court Rules of Professional Conduct, did not amount to deficient performance, observing also that the trial court advised the Petitioner of his right to counsel during the guilty plea submission hearing; and (4) that his pleas were knowingly and voluntarily entered, being supported by sufficient factual bases and an awareness by the Petitioner of the consequences of said pleas.

The Petitioner does not specifically challenge any of the conclusions made by the post-conviction court regarding the statute of limitations and due process but instead argues, for the first time on appeal, that due process requires tolling of the limitations period "when [the] Petitioner's attorney was operating under an actual conflict of interest" by representing both the Petitioner and his co-defendant. The Petitioner raised the conflict of interest issue in his second amended petition, submitting therein that he entered a guilty plea in this case "after being advised by counsel with a conflict of interest" and that he "need not prove prejudice as it relates to his ineffective assistance of counsel" claim because it should be presumed under these facts.[6] He only raised this

---

[6] We feel constrained to note that there is no presumption that counsel who may have had a potential conflict of interest in representing multiple clients provided ineffective assistance. Netters v. State, 957 S.W.2d 844, 847 (Tenn. Crim. App. 1997) (emphasis added) (internal citations omitted). If a petitioner cannot show that his counsel "'actively represented conflicting interests,'" then "'he has not established the constitutional predicate for his claim.'" George Anthony Braddock v. State, No. M2012-01605-CCA-R3-PC, 2014 WL 546351, at *16 (Tenn. Crim. App. Feb. 11, 2014) (quoting Cuyler v. Sullivan, 446 U.S. 335, 350 (1980)).

issue in the context of ineffective assistance of counsel and never as a due process basis for tolling of the statute of limitations. Thus, the Petitioner's issue on appeal involves a different allegation from those contained in his pro se or amended petitions, and he has, for all intents and purposes, changed theories on appeal. Accordingly, the Petitioner has waived appellate review of his claim for due process tolling on this ground. See Tommy Lee Clark v. State, No. W2009-01613-CCA-R3-PC, 2010 WL 1610532, at *2-3 (Tenn. Crim. App. Apr. 21, 2010) (holding that, because the petitioner's issues on appeal involved completely new and different allegations from those contained in his pro se or amended petitions, the issues were waived); see also Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."); State v. Alder, 71 S.W.3d 299, 303 (Tenn. Crim. App. 2001) (concluding that an appellant is bound by the evidentiary theory set forth at trial and may not change theories on appeal). Put another way, "[i]t is elementary that a party may not take one position regarding an issue in the trial court, change his strategy or position in mid-stream, and advocate a different ground or reason in this [c]ourt." State v. Adkisson, 899 S.W.2d 626, 635-36 (Tenn. Crim. App. 1994).

Moreover, even if not waived, we agree with the post-conviction court that the Petitioner has not shown his entitlement to tolling of the limitations period pursuant to the two-part test delineated by our supreme court in Whitehead., i.e., the Petitioner has not shown that he had been diligently pursuing his rights or that any extraordinary circumstance prevented the timely filing of his petition. 402 S.W.3d at 631. The Petitioner makes no assertion that he did not learn of the alleged conflict of interest until after the limitations period had expired. In fact, he states in his appellate brief that "the attorney misconduct that was present throughout [the Petitioner's] representation continued even after the plea." (Emphases added.) He further maintains that, "[t]here was never time, before, during, or after the plea in this case that [he] received advice from [trial counsel] that was not clouded in an actual conflict of interest because of the concurrent representation of [co-defendant] Awad." (Emphasis added)." The Petitioner also acknowledges that his case is not "directly on point" with Whitehead.

We conclude that nothing in the Whitehead rationale lends any support to the Petitioner's contention that his petition should survive a statute of limitations dismissal. The record demonstrates that the Petitioner was fully aware of both his trial counsel's potential conflict of interest and his own immigration risk at the time he entered his pleas. No new facts have developed since the time of the Petitioner's guilty pleas and the filing of his petition for post-conviction relief other than his fear of deportation becoming a reality. Despite being aware of the possible consequences, the Petitioner twice chose to travel to Egypt. Moreover, the Petitioner received a more favorable deal than his co-defendant. The Petitioner is attempting to combine his substantive argument regarding

-10-

ineffective assistance of counsel with his claim for due process tolling, yet this is not one of "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." 402 S.W.3d. at 631-32 (internal quotation omitted).

We have reviewed the record and the applicable law, and we determine that the interest of justice does not necessitate that the statute of limitations be tolled in this case. Because the one-year filing period for post-conviction petitions is jurisdictional, we decline to address the merits of the Petitioner's claims. See Tenn. Code Ann. § 40-30-102(b) (stating that a court does not have jurisdiction to consider a petition for post-conviction relief if it was filed outside the one-year statute of limitations and not subject to exception). We note that the Petitioner has had a full evidentiary hearing in this case, and his claims have been determined to be without merit. However, any possible dissatisfaction with the immigration consequences of the Petitioner's pleas should not provide a basis for overcoming the jurisdictional bar, those consequences being a matter better left handled by immigration authorities.

## CONCLUSION

In consideration of the foregoing and the record as a whole, the post-conviction court correctly dismissed the petition for being untimely filed. Accordingly, we affirm.

_____
D. KELLY THOMAS, JR., JUDGE

-11-